The Honorable Lee Cannon Sheriff, Pasco County 8700 Citizen Drive New Port Richey, Florida 34654
Dear Sheriff Cannon:
You ask the following questions:
1. Is there a violation of section 849.15, Florida Statutes, if a patron of an arcade amusement center receives a silver-colored token mixed in with the gold tokens he receives from the change machines which he can cash in for eight free gold tokens which, if purchased, would be in excess of seventy-five cents?
2. Does the pushing of a button marked "skill" equal the "application of skill" required by section 849.161, Florida Statutes?
In sum:
1. Section 849.15, Florida Statutes, is not violated if a patron of an arcade amusement center receives a silver-colored token mixed in with the gold tokens he receives from the change machines, which he can cash in for eight free gold tokens that, if purchased, would have a value in excess of seventy-five cents.
2. While the determination as to whether an arcade game involves the application of skill involves questions of fact which this office cannot resolve, the pushing of a button marked skill, in and of itself, would not appear to constitute the application of skill for purposes of qualifying for the exemption contained in section 849.161, Florida Statutes.
QUESTION ONE
According to your letter, all of the machines in an arcade amusement center can be operated only by the insertion of a gold-colored token. The exchange rate is: $1.00 — 5 tokens; $5.00 — 26 tokens; $10.00 — 55 tokens. You state, however, that if a patron receives a silver-colored token mixed in with the gold tokens he receives from the change machine, he can cash it in for eight free tokens.
Pursuant to section 849.15, Florida Statutes, it is unlawful to possess or permit the operation of any slot machine or device.[1]
Section 849.16, Florida Statutes, defines slot machine or device as one that is adapted for use in such a way that, by inserting a coin or other object, the machine operates and the user, by reason of any element of chance, receives something of value or secures additional chances to use the machine. Moreover, section 849.09, Florida Statutes, generally prohibits a person in this state from setting up or conducting a lottery, defined by the courts of this state as involving three elements: 1) a prize, 2) awarded by chance, 3) for consideration.[2]
Section 849.161, Florida Statutes, creates a limited exception from the prohibitions of chapter 849, Florida Statutes, for an arcade amusement center having amusement games or machines that operate by means of the insertion of a coin. "Arcade amusement center" is defined to mean "a place of business having at least 50 coin-operated amusement games or machines on premises which are operated for the entertainment of the general public and tourists as a bona fide amusement facility."[3]
Section 849.161(1), Florida Statutes, provides:
Nothing contained in this chapter shall be taken or construed as applicable to an arcade amusement center having amusement games or machines which operate by means of the insertion of a coin and which by application of skill may entitle the person playing or operating the game or machine to receive points or coupons which may be exchanged for merchandise only, excluding cash and alcoholic beverages, provided the cost value of the merchandise or prize awarded in exchange for such points or coupons does not exceed 75 cents on any game played. Nothing in this subsection shall be taken or construed as applicable to a coin-operated game or device designed and manufactured only for bona fide amusement purposes which game or device may by application of skill entitle the player to replay the game or device at no additional cost, if the game or device: can accumulate and react to no more than 15 free replays; can be discharged of accumulated free replays only by reactivating the game or device for one additional play for such accumulated free replay; can make no permanent record, directly or indirectly, of free replays; and is not classified by the United States as requiring a federal gambling tax stamp under applicable provisions of the Internal Revenue Code.
Thus, section 849.161, Florida Statutes, creates an exemption for a machine that would otherwise be prohibited by chapter 849, Florida Statutes, if the machine is located in an arcade amusement center and if, by application of skill, the player receives a prize worth less than seventy-five cents.
In the instant inquiry, the machine in question is a change machine that gives tokens in exchange for cash. The machine involves no application of skill either in using the machine or in the ability to acquire a silver token that may be exchanged for eight gold tokens. Thus the elements of a prize based on chance are present. There is, however, no consideration involved. The individual placing money in the machine for tokens gets what he paid for. Although he may receive more, no additional consideration was given for the chance to win such a prize. While there may be instances where consideration may be found because a machine or game results in a substantial increase in attendance in the arcade and resulting increase in receipts received by the arcade owner, no such evidence has been presented in the instant inquiry.[4]
Therefore, I am of the opinion that section 849.15, Florida Statutes, is not violated if a patron of an arcade amusement center receives a silver-colored token mixed in with the gold tokens from the change machines, which he can cash in for eight free gold tokens that, if purchased, would have a value in excess of seventy-five cents.
QUESTION TWO
Your second inquiry concerns a three-drum Bally slot machine into which one, two or three tokens are inserted. The player pulls a lever that sets the three drums revolving at a high rate of speed. While there are objects painted on the drums, you state that it is impossible to identify them at the rate of speed the drums are turning. A lighted button is located beneath each drum with the word "skill" on it. When the button is pushed the drum will stop, although there is a lapse of time before the drum stops spinning. Once all the drums have stopped spinning, a certain number of tokens is dispensed based upon the type and the number of objects displayed on the drums. You ask whether the pushing of a button marked "skill" equals the application of skill required by section 849.161, Florida Statutes.
In order to qualify for the exemption, the application of "skill" must be a factor in the player being entitled to receive something of value. However, while the statute requires that skill be a factor in determining whether the player is entitled to receive a prize or free plays, it does not appear to require that the outcome of the game be dependent solely on skill. To read the statute in such a manner would make the exemption from Chapter 849, Florida Statutes, superfluous.[5] Skill, however, must be a factor. Thus, the player's superior knowledge and attention or superior strength, agility and practice must be an element in the player's ability to win.[6]
The mere pushing of a button marked "skill" would not, in and of itself, appear to constitute the application of skill for purposes of qualifying for the exemption in section 849.161, Florida Statutes. With some machines, however, a player through superior knowledge, attention or practice may be able to determine when to stop the drums in order to win even though the element of chance still exists. In the instant inquiry, however, you state that while there are objects painted on the drum, it is impossible to identify them at the rate the drums are turning.
In addition, when the button marked "skill" is pushed, the drum does not immediately stop but there is a lapse of time before the drum stops spinning. Under such facts, it appears that the knowledge, attention, or practice of the player would not affect the element of chance that dominates the result of the play and, accordingly, such a machine would not qualify for the exemption provided in section 849.161, Florida Statutes.
The determination, however, as to whether an arcade game entails the application of skill involves questions of fact that this office cannot resolve, although the pushing of a button marked "skill," in and of itself, would not appear to constitute the application of skill for purposes of qualifying for the exemption contained in section 849.161, Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 849.15, Fla. Stat. (1993), provides that it is unlawful:
(1) To manufacture, own, store, keep, possess, sell, rent, lease, let on shares, lend or give away, transport, . . . or permit the operation of, or for any person to permit to be placed, maintained, or used or kept in any room, space, or building owned, leased or occupied by him or under his management or control, any slot machine or device or any part thereof; or (2) To make or to permit to be made with any person any agreement with reference to any slot machine or device, pursuant to which the user thereof, as a result of any element of chance or other outcome unpredictable to him, may become entitled to receive any money, credit, allowance, or thing of value or additional chance or right to use such machine or device, or to receive any check, slug, token or memorandum entitling the holder to receive any money, credit, allowance or thing of value.
[2] See, Little River Theater Corporation v. State ex rel. Hodge,185 So. 855 (Fla. 1939).
[3] See, s. 849.161(2), Fla. Stat. (1993).
[4] See, Op. Att'y Gen. Fla. 95-21 (1995), stating that the increased attendance and resulting increased benefits to a bingo operator who sponsored a "free game" constituted consideration; Op. Att'y Gen. Fla. 90-35 (1990).
[5] Statutory language is not to be assumed to be superfluous; statute must be construed so as to give meaning to all words and phrases contained within that statute. Terrinoni v. Westward Ho!,418 So.2d 1143 (Fla. 1st DCA 1982).
[6] See, 38 C.J.S. Gaming s. 1(b).